16 So.2d 460

Succession of BISSO.

Nos. 36943, 36988.

Dec. 13, 1943.

Lenfant & Villere, of New Orleans, for opponent and appellant William A. Bisso.

Milling, Godchaux, Saal & Milling and M. Truman Woodward, Jr., all of New Or-

leans, for appellant Mrs. Mary Alcorn Manzoni.

Lemle, Moreno & Lemle, of New Orleans, for executor and appellee Joseph A. Bisso.

HAMITER, Justice.

In her last will and testament, dated September 12, 1940, Mrs. Anna Bisso Tyler bequeathed to a neice, Mrs. Mary Alcorn Manzoni, certain lots in Square No. 6, Sixth District of the City of New Orleans, together with the improvements thereon. The instrument, following Mrs. Tyler's death, was ordered registered and executed, and Joseph A. Bisso was confirmed as testamentary executor of decedent's estate.

In due course of time the executor filed his final account, proposing therein to give to Mrs. Manzoni the mentioned lots and improvements free of any incumbrances. The account was opposed by William A. Bisso, he asserting that the executor had failed to recognize him as being entitled to a life usufruct on said real estate, and further, failed to list him as a creditor of the succession in the amount of $6,850. The basis for this opposition is a written contract and a certain mortgage note, each of date December 6, 1922, which are hereinafter discussed.

Opponent, on the trial of the opposition, was awarded the usufruct during his life of the property willed to Mrs. Manzoni; but his monied claim was rejected. Both he and Mrs. Manzoni appealed.

Mrs. Tyler, the testatrix, was a sister of opponent, William A. Bisso. On August 24, 1922, they purchased and acquired for their joint account the lots in question.

Less than four months later, specifically on December 6, 1922, opponent executed a credit deed by notarial act declaring that he was selling and conveying unto Mrs. Tyler his undivided one-half interest in and to the jointly purchased real estate for and in consideration of the price of $12,550. Of that amount, so the instrument recited, Mrs. Tyler paid to him $3,500 in cash; and for the balance, or $9,050, she gave her promissory note payable on demand, bearing eight per cent per annum interest from date until paid, and secured by a special mortgage and vendor's lien on the conveyed undivided one-half interest.

Also, at the time of the execution of that credit deed, the parties entered into a written contract, which is relied on by opponent in this litigation, describing the deed and declaring in part:

"Now, the truth is, that while title to said property is conveyed by said act to Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, the said William A. Bisso reserves unto himself the usufruct of his undivided one-half interest in and to said property, during his natural life.

\*     \*     \*     \*     \*

"While the note given in part payment of the purchase price of the above property stipulates to bear interest at the rate of eight (8%) per cent, same is hereby done for the convenience of William A. Bisso negotiating same, as it is understood and agreed by the parties hereto, that said note is not to bear interest, as between them-

selves and on the payment of Nine Thousand Fifty Dollars ($9,050.00) at any time, without interest, same shall be accepted in full as payment on said note."

From those provisions of the contract, it is to be seen that for the consideration of $12,550 William A. Bisso sold to his sister, Mrs. Tyler, only the naked ownership of his undivided one-half interest; and, further, the parties agreed that Mrs. Tyler would pay no interest on her $9,050 demand note so long as it was in the possession of her said brother.

Additional pertinent declarations found in the written agreement are:

"It Is Further Understood And Agreed, that should there remain at the time of the death of William A. Bisso, any unpaid portion of the purchase price of said property, then, and in that event, the said William A. Bisso, agrees and binds his heirs and executors to accept as full payment of the property hereinabove transferred, the amount so paid unto said William A. Bisso, prior to his death and to surrender to the said Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, her certain promissory note given in part payment of the purchase price and to cancel the mortgage outstanding against the property.

"It is Further Understood And Agreed, that in the event of Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, departing this life prior to said William A. Bisso, then, and in that event, the said William A. Bisso reserves unto himself the right to re-acquire said property from the heirs and executors of the said Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, and the said Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, hereby binds her heirs and executors to transfer over and unto William A. Bisso, his undivided one-half interest this day acquired from him, in consideration of the said William A. Bisso paying unto the heirs and executors of the said Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, the amount which she has paid on account of the purchase price of said property, without interest from date of said payments, or in lieu thereof, the said William A. Bisso, may continue to occupy the premises during the term of his natural life, said Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, bequeathing unto him the usufruct of the property hereinabove referred to, including her one-half interest."

The parties, by the last-quoted declarations, provided for the disposition to be made of the property upon the death of either. They expressed mutual covenants, stipulating that when one of them departed this life the survivor should be favored.

Mrs. Tyler was the first to die; hence the stipulation favoring her is now ineffective, and the brother, opponent herein, is to benefit under the agreement.

Opponent did not choose to re-acquire the naked ownership transferred to his sister, by paying to the heirs and executor of Mrs. Tyler the amount she had paid on account of the purchase price of the property, as he was entitled to do under the first of the two alternatives granted to him; rather, he elected to accept, and he now claims, the benefits of the second alternative; it being that he "may continue to occupy the premises during the term of his natural life, said

Mrs. Anna Nicholas Bisso, widow of Fred G. Tyler, bequeathing unto him the usufruct of the property hereinabove referred to, including her one-half interest." Additionally he asserts the right to be paid the balance due on the $9,050 demand note given him by Mrs. Tyler.

This monied claim, furnishing the principal issue in the litigation, is strenuously resisted by the executor and by Mrs. Manzoni. They urge that opponent's election to take the usufruct of the property, instead of his re-acquiring the naked ownership of the undivided one-half interest that he sold to his sister, forecloses, according to the contract's provisions, his right to collect on the note.

The promissory note, which is the basis of opponent's monied claim, is in the usual and regular form. Dated at New Orleans, Louisiana, December 6, 1922, it recites, "On demand, I promise to pay to the order of Myself at 606 United Fruit Building Nine Thousand and Fifty and No/100 Dollars for value received with interest at the rate of eight per cent per annum from date until paid;" and it is signed "Mrs. Anna Tyler". Across its face is the paraph of the notary public to identify it with the act of sale and mortgage passed on the named date; and on the back appears Mrs. Tyler's endorsement. This promissory note evidenced an unconditional obligation of Mrs. Tyler to pay on demand the sum of $9,050, being a part of the purchase price for the one-half interest acquired from her brother.

The written agreement, besides providing that the brother reserved the usufruct during his natural life of the conveyed one-half interest and that the note as between the parties would not bear any interest, contained the above-mentioned covenants respecting the property's disposition. Presumably it was a commutative contract, or one in which "what is done, given or promised by one party, is considered as equivalent to, or a consideration for what is done, given, or promised by the other." Revised Civil Code, Article 1768.

If the brother had died first, according to the expressed provisions of the contract, any balance then due on Mrs. Tyler's indebtedness would have been considered paid, and her note would have been surrendered and the mortgage cancelled; and, thus, the naked ownership would have remained undisturbed in Mrs. Tyler. However, on her predeceasing the brother, and in consideration of his covenant, he could re-acquire the conveyed one-half interest (naked ownership) by refunding to her heirs or executors the amount paid by her on the purchase price; or in lieu thereof he could enjoy a life usufruct on the property. The last alternative is the one accepted by the brother. By accepting it he obtains only the usufruct of the sister's one-half interest, the usufruct of the other one-half interest being already held by him; and the naked ownership of the entire property remains in the sister's estate.

As we appreciate and interpret the written contract, the exercise of the second alternative right granted to the brother is not conditioned upon an extinguishment of the balance of Mrs. Tyler's promissory note indebtedness. There exists no expressed

provision to that effect; neither is such a condition shown by implication. The contract expressly stipulated a cancellation of the indebtedness and mortgage with respect to the brother's covenant and upon his death; and it seems to us that a similar stipulation would have been placed in it, relative to the granting of the usufruct on the sister's death, had the parties so intended.

Before us in this litigation are two separate engagements of the parties founded upon different considerations. In the credit deed, the first engagement, the brother transferred the naked ownership of his interest to his sister for her cash payment and promissory note. Under the second engagement, the written contract, by which one was to benefit on the death of the other, the brother agreed that the note (whatever was due thereon even its full amount) would be deemed paid and cancelled if he died first; and in return for this consideration, if the sister predeceased him, the brother could, under the mentioned second alternative, have the usufruct of her portion of the property for the rest of his natural life, the return of the note not being mentioned. To order now an extinguishment of Mrs. Tyler's indebtedness would affect the first engagement and mean a cancellation of the consideration that moved from her to the brother under the credit deed, while leaving in the sister's estate and upholding the consideration (transfer of naked ownership) that passed from him to her; obviously this situation was not contemplated by the parties.

If, for the sake of argument, the note had been paid in full prior to Mrs. Tyler's death, certainly it could not be correctly said that under the written contract the brother, before accepting the usufruct given to him, would be required to refund all or a part of the money that he received. In this connection, it is quite significant that no demand has been made on him for a return of the money already paid on the note. Payments on this obligation by Mrs. Tyler, so the evidence discloses, totaled $4,200, thus leaving a balance due of $4,850. The contract does not provide for such reimbursement; neither does it stipulate an extinguishment of any balance due under the note upon the brother's acceptance of the usufruct.

It is contended by counsel for Mrs. Manzoni, but apparently not seriously, that the grant to the brother of the usufuct on Mrs. Tyler's one-half interest was void, this for the reason that he had executed no formal acceptance of it as required by law. The contention is based on the false premise that the grant was in the nature of a donation; hence, it is without merit. Of course, the reception of the benefit was a matter of contract.

For the reasons assigned, the judgment of the district court is amended to the extent of ordering Joseph A. Bisso, executor of the Succession of Mrs. Anna Bisso Tyler, to list on the final account of the succession proceedings the debt of $4,850 due to William A. Bisso, and to pay that indebtedness; and, as amended, the judgment is affirmed.